OPINION
{¶ 1} On December 22, 2006, Ohio State Highway Patrol Trooper Troy Hale observed appellant, Dwayne Frakes, make a left-hand turn without activating his turn signal, and observed that his vehicle did not have a working license plate light. Trooper Hale pulled appellant over. Upon investigation, Trooper Hale cited appellant for operating a motor vehicle while intoxicated in violation of R.C. 4511.19(A)(1) and (2), and failure to use turn signal in violation of R.C. 4511.39.
 {¶ 2} On February 26, 2007, appellant filed a motion to suppress/dismiss, challenging the stop, the field sobriety testing procedures, and the arrest. A hearing was held on March 27, 2007. By judgment entry filed May 4, 2007, the trial court denied the motion.
 {¶ 3} On July 10, 2007, appellant pled no contest to the OVI charge. By judgment entry filed same date, the trial court sentenced appellant to ninety days in jail, eighty-two days suspended in lieu of probation.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE DID NOT ESTABLISH REASONABLE ARTICULABLE SUSPICION TO ADMINISTER THE FIELD SOBRIETY TESTS."
 II {¶ 6} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO SATISFY ITS BURDEN THAT THE *Page 3 
TESTS WERE ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH NHTSA STANDARDS."
 III {¶ 7} "THE TRIAL COURT ERRED IN TAKING JUDICIAL NOTICE OF THE NHTSA MANUAL AFTER THE STATE FAILED TO PRESENT THE MANUAL AT THE MOTION HEARING."
 IV {¶ 8} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE EVEN IF THE STATE DID SATISFY ITS INITIAL BURDEN OF SHOWING THE FIELD SOBRIETY TESTS WERE CONDUCTED IN SUBSTANTIAL COMPLIANCE, THE APPELLANT MET HIS BURDEN OF IMPEACHING TROOPER HALE AND THE RESULTS OF THE TESTS MUST BE SUPPRESSED."
 V {¶ 9} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE TROOPER HALE DID NOT HAVE PROBABLE CAUSE TO ARREST THE APPELLANT FOR OVI."
 {¶ 10} Appellant's five assignments of error challenge the trial court's decision to deny his motion to suppress. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein
(1991), 73 Ohio App.3d 485; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the *Page 4 
trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . .; as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 I, V {¶ 11} Appellant claims the trial court erred in finding reasonable, articulable suspicion existed to stop his vehicle, and probable cause existed to arrest him. We disagree.
 {¶ 12} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory *Page 5 
stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus. Probable cause to arrest is not synonymous to probable cause for search. Arrest focuses on the prior actions of the accused. Probable cause exists when a reasonable prudent person would believe that the person arrested had committed a crime. State v. Timson (1974), 38 Ohio St.2d 122. A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations. Katz, Ohio Arrest, Search and Seizure (2001 Ed.), 83-88, Sections. 3.12-3.19.
 {¶ 13} Trooper Hale testified he personally observed that appellant failed to use his turn signal while turning left onto Otsego Avenue, and his vehicle did not have a working license plate light. T. at 10. After stopping appellant, Trooper Hale noticed a strong order of alcohol coming from appellant's person, and noticed his eyes were red and glassy. T. at 13. Appellant admitted to drinking that evening. T. at 15.
 {¶ 14} We find these facts are sufficient to establish that the stop of appellant's vehicle met the requirements of Terry and its progeny.
 {¶ 15} Upon stopping appellant, there were sufficient indicia of intoxication, including appellant's stubbornness about having to use a left turn signal, the odor of alcohol about his person, and red, glassy eyes, to warrant the administration of field sobriety tests. On the horizontal gaze nystagmus test, appellant demonstrated six out of six clues for intoxication. T. at 25. Appellant never completed the one-leg stand test *Page 6 
because he kept putting his foot down. T. at 25-26. On the walk-and-turn test, appellant exhibited two clues for intoxication. T. at 26. Based upon the totality of the circumstances, we find Trooper Hale had probable cause to arrest appellant for driving under the influence.
 {¶ 16} Upon review, we find the trial court did not err in denying appellant's motion to suppress on these issues.
 {¶ 17} Assignments of Error I and V are denied.
 II, IV {¶ 18} In these assignments of error, appellant challenges the trial court's decision to admit the results of the field sobriety tests. Appellant claims the tests were not administered in substantial compliance with NHTSA standards, the trial court erred in taking judicial notice of the NHTSA standards, and the state failed to establish the tests were conducted in substantial compliance. We disagree.
 {¶ 19} R.C. 4511.19(D)(4)(b) states the following in pertinent part:
 {¶ 20} "[I]f a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 21} "(i) The officer may testify concerning the results of the field sobriety test so administered. *Page 7 
 {¶ 22} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 23} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 24} In State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 34, the Supreme Court of Ohio explained "substantial compliance" as follows:
 {¶ 25} "Precisely for this reason, we concluded in Steele that rigid compliance with the Department of Health regulations is not necessary for test results to be admissible. Steele, 52 Ohio St.2d at 187, 6
O.O.3d 418, 370 N.E.2d 740 (holding that the failure to observe a driver for a `few seconds' during the 20-minute observation period did not render the test results inadmissible). To avoid usurping a function that the General Assembly has assigned to the Director of Health, however, we must limit the substantial-compliance standard set forth inPlummer [(1986), 22 Ohio St.3d 292] to excusing only errors that are clearly de minimis. Consistent with this limitation, we have characterized those errors that are excusable under the substantial-compliance standard as `minor procedural deviations.'State v. Homan (2000), 89 Ohio St.3d 421, 426, 732 N.E.2d 952."
 {¶ 26} Appellant argues because Trooper Hale failed to testify to the standardized requirements for each test, the state failed in its initial burden. Appellant *Page 8 
argues the trooper's testimony was insufficient to establish there was compliance with the NHTSA requirements.
 {¶ 27} Trooper Hale testified he instructed appellant on how to take the tests under the NHTSA guidelines, although not verbatim. T. at 16. All the field sobriety tests administered were recorded on videotape which was played for the trial court. T. at 18. The trial court had direct evidence in near perfect form to observe if the tests were given in compliance with the NHTSA guidelines.
 {¶ 28} In its judgment entry filed May 4, 2007, the trial court did a complete analysis of the tests given vis-à-vis the NHTSA guidelines:
 {¶ 29} "Defendant also argues that the officer failed to ask the defendant if he was wearing contact lenses. This Court's review of the N.H.T.S.A. manual fails to review any such instruction in the manual. Defendant argues that the test took too long. The N.H.T.S.A. manual provides no time limitation in which to complete the test. It only provides for how long to move the stimulus and hold it in place.
 {¶ 30} "From the video, the officer did fail to advise the defendant to follow the stimulus until told to stop. However, despite the lack of this instruction the defendant did follow the stimulus until he was told the test was over. The officer's test was not affected by his failure to give that instruction, thus this minor deviation is inconsequential.
 {¶ 31} "Defendant further argues that the officer failed to check for vertical nystagmus. While this is included in the H.G.N. test outline, it is odd because no `clues' are obtained from this portion of the test. All six (6) clues are indicated on the horizontal portion of the test. Since the horizontal portion of the test was completed and since all *Page 9 
six (6) clues were observed, the failure to complete a vertical test was a minor deviation and this is also inconsequential. According to the N.H.T.S.A. manual, if a suspect displays four (4) or more clues it is likely that the suspect's B.A.C. is above .10.
 {¶ 32} "* * *
 {¶ 33} "The N.H.T.S.A. manual states that if the suspect exhibits two (2) or more clues, or fails to complete the test, the suspects B.A.C. is likely to exceed .10. It would seem reasonable that as long as instructions were adequately given to the suspect, and the suspect showed two (2) clues and the specific instructions were given concerning those clues, that the officer has substantially complied with the testing procedures. However, lets review the specific evidence. . . . . Page 22, line 3, of the transcript is the start of the Walk and Turn instructions. The officer tells the defendant that `touching heel to toe put your right foot in front of your left foot', and then demonstrates. Then he says `now hold that position' . . . `put your hands down to your side' . . . `hold that position until I tell you to start'. `Do you understand so far?' . . . `take nine heel to toe steps like this, touching heel to toe everytime and keeping your hands to your side.' . . . `Take nine heel to toe steps out, turn to your left and take nine back'. The officer demonstrated and showed the defendant how to make the turn with small steps and repeated the instructions: `keep your hands to your side, watch your feet, count out loud' . . . and then asked the defendant if he understood. The defendant indicated that he understood. The officer observed two (2) clues, i.e., that the defendant failed to keep his balance while listening to instructions, and that he made an improper turn by making one quick turn. The N.H.T.S.A. manual provides verbal instructions to give. Did this officer use them exactly? The answer is no. But, did he give them sufficiently and demonstrate *Page 10 
them so that a normal reasonable person could understand them? The answer is yes, especially considering the parts relevant to the two (2) clues observed. This Court therefore finds that this officer substantially complied with the instructions provided by the N.H.T.S.A. manual. (It should be noted that on the videotape the defendant also started before he was told to do so which is also a clue but this was not noted by the officer at the time of the test.) The N.H.S.T.A. manual states that if the defendant exhibits two (2) or more clues on this test, or fails to complete the test, there is a 68% probability that the defendant's B.A.C. will be above .10%.
 {¶ 34} "For the one-leg stand test * * * [t]he officer observed that the defendant showed three (3) of the clues, namely swayed, used arms for balance, and put his food down (three (3) times). The officer notes that the defendant failed to complete the test. The N.H.T.S.A. manual states that if the defendant shows two (2) or more clues, or fails to complete the test, that there is a good chance that the defendant's B.A.C. is above .10."
 {¶ 35} The trial court concluded the following:
 {¶ 36} "The video tape reveals that the officer provided sufficient instructions to the defendant who acknowledged he understood the instructions, and that the instructions given, although not verbatim from the N.H.T.S.A. manual, were in substantial compliance with the N.H.T.S.A. manual."
 {¶ 37} We have reviewed Trooper Hale's direct testimony as well as the videotape and find the trial court's observations and analysis on substantial compliance to be correct. *Page 11 
 {¶ 38} Upon review, we find the trial court did not err in denying appellant's motion to suppress on these issues.
 {¶ 39} Assignments of Error II and IV are denied.
 III {¶ 40} Appellant claims the trial court erred in taking judicial notice of the NHTSA manual after the suppression hearing. We disagree.
 {¶ 41} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 42} During the hearing, the trial court took testimony and listened to arguments of counsel. The trial court then permitted counsel to file briefs within fourteen days. T. at 83. During the course of defense counsel's cross-examination of Trooper Hale, the NHTSA manual was used. T. at 63-65. On April 9, 2007, some thirteen days after the hearing, the state requested that the trial court take judicial notice of the NHTSA manual, and the trial court did. See, Judgment Entry filed May 3, 2007.
 {¶ 43} The taking of judicial notice is governed by Evid. R. 201. Under Evid. R. 201(B), "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." However, the rule is limited in scope to "only judicial *Page 12 
notice of adjudicative facts; i.e., the facts of the case" [Evid. R. 201(A)]; therefore, the use of judicial notice was technically not appropriate sub judice.
 {¶ 44} The NHTSA manual qualifies as a self-authenticated exhibit under Evid. R. 902(5) and as such, extrinsic evidence is not required:
 {¶ 45} "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
 {¶ 46} "(5) Official publications. Books, pamphlets, or other publications purporting to be issued by public authority."
 {¶ 47} Because the manual was used in cross-examination and because it qualifies under Evid. R. 902(5), we find the trial court did not abuse its discretion in receiving it during the post-hearing briefing stage.
 {¶ 48} Assignment of Error III is denied.
 {¶ 49} The judgment of the Municipal Court of Coshocton County, Ohio is hereby affirmed.
 Farmer, J. Gwin, P.J. and Delaney, J. concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Coshocton County, Ohio is affirmed. *Page 1